ANDRÉ BIROTTE JR.
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
RANEE A. KATZENSTEIN (Cal. SBN: 187111)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
RICHARD E. ROBINSON (Cal. SBN: 090840)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2432/0713
     Facsimile: (213) 894-6269
     E-mail: Ranee.Katzenstein@usdoj.gov
             Richard.Robinson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) CR No. 10-152-R |
|---|---|
| Plaintiff, | ) PLEA AGREEMENT FOR DEFENDANT |
| v. | ) TATIANA KHAN |
| TATIANA KHAN, | ) |
| Defendant. | ) |

1.  This constitutes the plea agreement between TATIANA KHAN ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities.

## PLEA

2.  Defendant agrees to plead guilty to counts three and

four of the indictment in <u>United States v. Tatiana Khan</u>, CR No. 10-152-R.

## NATURE OF THE OFFENSE

3. In order for defendant to be guilty of count three, which charges a violation of Title 18, United States Code, Section 1001(a)(2), the following must be true:

    (a) the defendant made a false statement in a matter within the jurisdiction of a department of the United States;

    (b) the defendant acted willfully, that is deliberately and with knowledge that the statement was untrue; and

    (c) the statement was material to the department's activities or decisions.

In order for defendant to be guilty of count four, which charges a violation of Title 18, United States Code, Section 1512(b)(3), the following must be true:

    (a) the defendant acted corruptly;

    (b) the defendant persuaded or attempted to persuade another person; and

    (c) the defendant acted with the intent to hinder, delay or prevent the communication to a law enforcement officer or a judge of the United States of information relating to the commission or possible commission of a Federal offense.

Defendant admits that defendant is, in fact, guilty of both of these offenses as described in counts three and four of the indictment.

PENALTIES AND RESTITUTION

4. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1001(a)(2), is: 5 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1512(b)(3), is: 20 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

Therefore, the statutory maximum sentence that the Court can impose for both violations to which defendant is pleading guilty is: 25 years imprisonment; a 3-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

5. Defendant understands that defendant will be required to pay full restitution to the victims of the offenses. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the amount of restitution is not restricted to the amounts alleged in the counts to which defendant is pleading guilty and may include losses arising from counts dismissed and charges not prosecuted pursuant to this agreement as well as all relevant conduct in connection with those counts and charges. The parties currently believe that the

applicable amount of restitution payable to victim V. S. is $2,000,000, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing. Defendant further agrees that defendant will not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

6. Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7. Defendant also understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

8. Defendant further understands that the convictions in this case may subject defendant to various collateral consequences, including but not limited to deportation, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

## FACTUAL BASIS

9. Defendant and the USAO agree and stipulate to the

statement of facts provided in Exhibit A to this Plea Agreement. This statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the sentencing guideline factors set forth in paragraph 12 below. It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

## WAIVER OF CONSTITUTIONAL RIGHTS

10. By pleading guilty, defendant gives up the following rights:

   a) The right to persist in a plea of not guilty.

   b) The right to a speedy and public trial by jury.

   c) The right to the assistance of legal counsel at trial, including the right to have the Court appoint counsel for defendant for the purpose of representation at trial. (In this regard, defendant understands that, despite her plea of guilty, she retains the right to be represented by counsel -- and, if necessary, to have the court appoint counsel if defendant cannot afford counsel -- at every other stage of the proceeding.)

   d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

   e) The right to confront and cross-examine witnesses against defendant.

   f) The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

g) The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

By pleading guilty, defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## SENTENCING FACTORS

11. Defendant understands that the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7), including the kinds of sentence and sentencing range established under the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"), in determining defendant's sentence. Defendant further understands that the Sentencing Guidelines are advisory only, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime of conviction.

12. Defendant and the USAO agree and stipulate to the following applicable Sentencing Guidelines factors:

*Count Three: 18 U.S.C. § 1001(a)(2)*

Base Offense Level :   19    [U.S.S.G. § 2J1.2(c)(1); 2X3.1(a)1)]

Obstruction of Justice:  +2    [U.S.S.G. § 3C1.1]

21

*Count Four: 18 U.S.C. § 1512(b)(3)*

Base Offense Level :   19    [U.S.S.G. § 2J1.2(c)(1); 2X3.1(a)1)]

The offenses group pursuant to U.S.S.G. § 3D1.2(c); § 3C1.1 comment. (N.8).

The offense level for the group is 21 pursuant to U.S.S.G. § 3D1.3(a).

<u>Acceptance of Responsibility</u>        :     -3    [U.S.S.G. §3E1.1(a), (b)]

---

Total Offense Level :    18

The USAO will agree to a downward adjustment for acceptance of responsibility (and, if applicable, move for an additional level under § 3E1.1(b)) only if the conditions set forth in paragraphs 16 and 17 are met.  Subject to paragraph 15, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments or departures, relating to either the applicable Offense Level or the Criminal History Category, be imposed.

    13.  There is no agreement as to defendant's criminal history or criminal history category.

    14.  Defendant and the USAO, pursuant to the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7), further reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines.

    15.  The stipulations in this agreement do not bind either the United States Probation Office or the Court.  Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the calculation of the sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines

calculations are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.

### DEFENDANT'S OBLIGATIONS

16. Defendant agrees that she will:

   a) Plead guilty as set forth in this agreement.

   b) Not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

   c) Not knowingly and willfully fail to: (i) appear for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

   d) Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

   e) Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

   f) Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay.

17. Defendant further agrees:

   a) To disclose to law enforcement officials, at a date and time to be set by the USAO, the whereabouts of, defendant's ownership interest in, and all other information known to defendant about, all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, defendant's illegal activities, and to forfeit all right, title, and interest in and to such items,

specifically including all right, title, and interest in and to all United States currency, property and assets, including an untitled 1972 painting by Willem de Kooning [the "de Kooning Painting"] that was seized by law enforcement officials on January 8, 2010, pursuant to the warrant issued in case number 10-30-M.

      b) To the Court's entry of an order of forfeiture at or before sentencing with respect to these assets, including the de Kooning Painting, and to the forfeiture of the assets, including the de Kooning Painting.

      c) To take whatever steps are necessary to pass to the United States clear title to the assets described above, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

      d) Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against these properties pursuant to any applicable statute. Defendant hereby withdraws her claim filed in the administrative forfeiture proceeding against the de Kooning Painting instituted by the Federal Bureau of Investigation and consents to its administrative forfeiture.

      e) Not to assist any other individual in any effort falsely to contest the forfeiture of the assets described above.

      f) Not to claim that reasonable cause to seize the assets was lacking.

      g) To prevent the disbursement of any and all assets described above if such disbursements are within defendant's

direct or indirect control.

h) To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the United States Attorney's Office.

i) That forfeiture of assets described above shall not be counted toward satisfaction of any special assessment, or fine that the Court may impose. However, to the extent that any asset described above is forfeited and the proceeds paid to a victim of defendant's crimes through the administrative remission process, or applied to defendant's restitution order through the restoration process, defendant's restitution order shall be credited in that amount. The USAO further agrees that it will recommend to the Department of Justice that the net proceeds of sale of any forfeited assets be distributed through the remission and/or restoration processes.

## THE USAO'S OBLIGATIONS

18. If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

a) To abide by all sentencing stipulations contained in this agreement.

b) Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not to further prosecute defendant for violations of 18 U.S.C. §§ 1001, 1512, 1341, 1343, 2314, 1956, and 1957 arising out of defendant's conduct described in the stipulated factual basis set forth in Exhibit A to this Plea Agreement. Defendant understands that the USAO is free to prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs

after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, where the sentence should fall within that range, the propriety and extent of any departure from that range, and the determination of the sentence to be imposed after consideration of the sentencing guidelines and all other relevant factors.

   c) At the time of sentencing to move to dismiss the remaining counts of the indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider the dismissed counts in determining the applicable Sentencing Guidelines range, where the sentence should fall within that range, the propriety and extent of any departure from that range, and the determination of the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

   d) At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, to recommend a two-level reduction in the applicable sentencing guideline offense level, pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary, move for an additional one-level reduction if available under that section.

   e)  To recommend that the Court make a 4-level variance from defendant's adjusted offense level of 18 in view of defendant's health condition; defendant has reserved the right to argue that a greater variance resulting in a sentence of probation is warranted.

## BREACH OF AGREEMENT

19. If defendant, at any time after the execution of this agreement, knowingly violates or fails to perform any of defendant's agreements or obligations under this agreement ("a breach"), the USAO may declare this agreement breached. If the USAO declares this agreement breached at any time following its execution, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all of its obligations under this agreement.

20. Following the Court's finding of a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

   a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such prosecution or action.

   b) Defendant gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

   c) Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the stipulated factual basis statement in this agreement; and (iii) any evidence

derived from such statements, are admissible against defendant in any such prosecution of defendant, and defendant shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from any statements should be suppressed or are inadmissible.

### LIMITED MUTUAL WAIVER OF APPEAL

21.  Defendant gives up the right to appeal any sentence imposed by the Court, including any order of restitution, and the manner in which the sentence is determined, provided that (a) the sentence is within the statutory maximum specified above and is constitutional, and (b) the Court imposes a sentence within or below the range corresponding to a total offense level of 18, and the applicable criminal history category as determined by the Court.  Notwithstanding the foregoing, defendant retains any ability defendant has to appeal the Court's determination of defendant's criminal history category and the conditions of supervised release imposed by the Court, with the exception of the following: conditions set forth in General Orders 318, 01-05, and/or 05-02 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

22.  The USAO gives up its right to appeal the sentence, provided that the sentence is within the statutory maximum specified above and is constitutional.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

23.  Defendant agrees that if either count of conviction is

vacated, reversed, or set aside, the USAO may (a) ask the Court to resentence defendant on any remaining count of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on the remaining count of conviction, with both the USAO and defendant being released from all of their obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact. Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

## COURT NOT A PARTY

24. The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations. Even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from any stipulation, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. No one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

25. Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel. Nor may any additional agreement,

understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

### PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

26. The parties agree and stipulate that this Agreement will be considered part of the record of defendant's guilty plea hearing as if the entire Agreement had been read into the record of the proceeding.

This agreement is effective upon signature by defendant and an Assistant United States Attorney.

AGREED AND ACCEPTED


UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

ANDRÉ BIROTTE JR.
United States Attorney

_____        4/26/10
RANEE A. KATZENSTEIN                   Date
Assistant United States Attorney


I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises or inducements have been given to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the

1 representation of my attorney in this matter.

2

3  [signature]                           4-23-10
   TATIANA KHAN                          Date
4  Defendant

5

6     I am Tatiana Khan's attorney. I have carefully discussed
7  every part of this agreement with my client. Further, I have
8  fully advised my client of her rights, of possible defenses, of
9  the sentencing factors set forth in 18 U.S.C. § 3553(a), of the
10 relevant Sentencing Guidelines provisions, and of the
11 consequences of entering into this agreement. To my knowledge,
12 my client's decision to enter into this agreement is an informed
13 and voluntary one.

14

15 [signature]                            4-23-10
   JAMES W. SPERTUS                      Date
16 Counsel for Defendant
   Tatiana Khan
17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT A:
## STATEMENT OF FACTS
## IN SUPPORT OF PLEA AGREEMENT

Defendant TATIANA KHAN represents and admits that the following facts are true:

1. At all times relevant to the indictment:

   a. Defendant was in the business of selling art, antiques, and decorative objects. Defendant did business as Chateau Allegré, a fictitious business name used by defendant for her gallery located on North La Cienega Boulevard in the West Hollywood area of Los Angeles. Defendant persuaded clients of Chateau Allegré to purchase art, antiques, and decorative objects by making false representations and material omissions of fact about their origins and their values.

   b. In or about August 2006, defendant arranged to have an art restorer working in North Hollywood, California, make a copy (hereinafter, the "Copy") of a valuable original work of art, namely, a pastel drawing entitled *La Femme au Chapeau Bleu* [*Woman in the Blue Hat*], by the famous artist Pablo Picasso. Defendant KHAN provided the art restorer with a color photograph of the original pastel to be copied.

   c. Defendant paid the art restorer $1000 to make the Copy.

   d. Defendant falsely and fraudulently represented to victim V.S. and others that the Copy was an original work of art created by Pablo Picasso.

   e. Defendant sold the Copy to victim V.S. for $2 million in or about October 2006.

3. In order to sell the Copy to victim V.S., defendant

maintained the following materially false pretenses and made the following materially false representations and promises to victim V.S. and others:

   a. That the Copy was an original work of art created by Pablo Picasso;

   b. That the Copy had a fair market value of substantially more than $2 million;

   c. That the Copy had been sold in 1990 by the auction house Sotheby's;

   d. That the Copy had once been owned by the family of the publisher Malcolm Forbes; and

   e. That defendant handled private sales for the Forbes family and was able to sell its items, which purportedly included the Copy, for substantially less than their fair market value because the Forbes family wanted to keep the sales private and, in order to do so, was willing to sell its items for a below-market value.

4. In truth and in fact, as defendant then well knew:

   a. The Copy was not an original work of art created by Pablo Picasso;

   b. The Copy did not have a fair market value of more than $2 million and was, in fact, worth considerably less than that amount;

   c. The Copy had not been sold in 1990 by Sotheby's;

   d. The Copy had never been owned by the family of Malcolm Forbes; and

   e. Defendant did not handle private sales for the Forbes family.

5. Defendant failed to disclose and concealed the following material facts from victim V.S. and others:

    a. That the Copy sold to victim V.S. for $2 million had been made in or about August 2006 by an art restorer working in North Hollywood, California;

    b. That defendant had paid $1000 to the art restorer for making the Copy; and

    c. That defendant had never represented the Forbes family in any capacity.

6. After defendant sold the Copy to Victim V.S. for $2 million, defendant made false and misleading representations and promises to victim V.S. and others for the purpose of maintaining the pretense, and lulling victim V.S. and others into the false belief, that the Copy had a fair market value of at least $2 million. Such false and misleading representations and promises included: (a) appraisals provided by defendant, which falsely and fraudulently represented that the Copy was a work of art created by Picasso having a value of at least $4 million; and (b) claims that third parties were considering paying a substantial price for the Copy.

7. On or about September 18, 2009, during an interview that took place at the premises of Chateau Allegré, defendant told a Special Agent of the Federal Bureau of Investigation ("FBI") that she had obtained the Copy from an individual named "Rusica Sakic Porter," when, in truth and in fact, as defendant then well knew, "Rusica Sakic Porter" was not the source of the Copy and, instead, defendant had paid an art restorer working in North Hollywood $1000 to make the pastel drawing by copying a

1 photograph of an original Picasso pastel, which photograph
2 defendant had provided to the art restorer.
3     8. In or about October, 2009, defendant told the art
4 restorer to tell Special Agents of the FBI who were investigating
5 the sale of the Copy that she (the art restorer) only did
6 restoration work for defendant and did not do any copy work for
7 defendant KHAN, thereby concealing from the FBI agents that the
8 art restorer had made the Copy for defendant at defendant's
9 request, and that defendant had paid the art restorer $1000 for
10 her work making the Copy.
11                                ***
12     I have read this Exhibit A to the Plea Agreement and
13 carefully discussed every part of this Exhibit A to the Plea
14 Agreement with my attorney. I agree to the facts as stated
15 above, and represent and admit that they are true.
16
17 _[signature]_                             4-23-10
   TATIANA KHAN                           Date
18 Defendant
19     I am TATIANA KHAN's attorney. I have read this Exhibit A to
20 the Plea Agreement and carefully discussed every part of this
21 Exhibit A to the Plea agreement with my client. To my knowledge,
22 my client's decision to agree to the facts as stated above and to
23 represent and admit that they are true is an informed and
24 voluntary one.
25
26 _[signature]_                             4-23-10
   JAMES W. SPERTUS                    Date
27 Counsel for Defendant
   TATIANA KHAN
28