1  LAW OFFICES OF JAMES W. SPERTUS
2  James W. Spertus (SBN 159825)
   Amanda R. Touchton (SBN 220430)
3  1990 S. Bundy Dr., Suite 705
   Los Angeles, California  90025
4  Telephone: (310) 826-4700
   Facsimile:  (310) 826-4711
5  jim@spertuslaw.com
   amanda@spertuslaw.com
6
   Attorneys for Defendant
7  Tatiana Khan

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,          Case No. CR 10-00152-R

12          Plaintiff,                 **DEFENDANT TATIANA KHAN'S
                                       OBJECTIONS TO THE
13      vs.                            PRESENTENCE REPORT AND
                                       SENTENCING POSITION PAPER**
14
                                       Date:        October 4, 2010
15  TATIANA KHAN,                      Time:        1:30 p.m.
                                       Courtroom:   8
16          Defendant.

17

18

19       Defendant Tatiana Khan ("Ms. Khan"), by and through her counsel of record

20  James W. Spertus, hereby submits her Objections to the Presentence Report ("PSR")

21  and her Sentencing Position Paper in the above-captioned matter.

22  Dated: September 21, 2010      Law Offices of James W. Spertus

23

24                            By:   /S_____

25                                  James W. Spertus
                                    Amanda R. Touchton
26                                  Attorneys for Tatiana Khan

27

28

       Defendant Tatiana Khan's Objections to Presentence Report and Sentencing Position Paper

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant Tatiana Khan has accepted full responsibility for her involvement in the offenses underlying this sentencing proceeding and, for the reasons set forth herein, respectfully requests that the Court sentence her to probation.  Ms. Khan will not survive any sentence of imprisonment.  Ms. Khan committed the crimes of conviction while suffering from extreme financial pressures that resulted from overwhelmingly large medical bills.  Ms. Khan has no medical insurance, she turned 70 this year, and she has a wide variety of health problems, including congestive heart failure, which placed her under a crushing debt from staggeringly high medical bills.

Ms. Khan has been in and out of the hospital many times over the past few years, has had numerous surgeries, and uses an oxygen tank to breathe.  The Probation Officer recognizes that Ms. Khan's medical condition provides a basis for a departure from the sentencing guideline range (PSR ¶ 125) or a variance from the guideline sentence (PSR ¶ 127), and the government too, pursuant to its written plea agreement with Ms. Khan, will make a request for a variance from the guidelines. (Plea Agreement ¶ 18(e), p.11.)  Ms. Khan also seeks a variance based on her advanced age and lack of substantial criminal history.

A sentence of probation would allow Ms. Khan to spend the remainder of her life trying to make full restitution for her crime.  Submitted concurrently herewith are numerous letters from friends, family and community members who speak to Ms. Khan's positive character, and her commitment to her community, which provides an additional ground for a variance from the guideline range.

Based on Ms. Khan's acceptance of responsibility and her serious health condition, a sentence of probation would allow Ms. Khan to receive the medical care she needs, while providing sufficient correctional oversight, and would allow her to devote her energies to making restitution.

## II.   THE PRESENTENCE REPORT

The parties agree with the calculation set forth in the Presentence Report ("PSR") that leads to a final adjusted offense level of 16, prior to any departures or variance.   In the written plea agreement, the government agreed to make a four level variance (Plea Agreement ¶ 18(e), p.11) based on Ms. Khan's poor physical health, but that agreement was based on the parties' belief that Ms. Khan's final adjusted offense level would be Level 18.  Now that all parties agree that the applicable offense level is Level 16, the government may change its position on the degree of variance requested.  The Government will make a request for a variance, but the amount of that requested variance is presently unknown.  The PSR also acknowledges that a variance from this offense level is appropriate based on Ms. Khan's severe medical problems and health issues.  (PSR ¶ 127)

Ultimately, Ms. Khan is hopeful that the Court will sentence her to a term of probation based upon the following calculations:

| | | |
|---|---|---|
| Base Offense Level: | 17 | (Guideline § 2J1.2(c)(1); 2X3.1(a)(1)) |
| Obstruction of Justice: | +2 | |
| Acceptance of Responsibility: | - 3 | (Guideline § 3E1.1) |
| Variance/Departure: | - 8 | |
| Total Offense Level: | 8 | |

## III.   OBJECTIONS TO THE PRESENTENCE REPORT

Ms. Khan objects to the following facts set forth in the PSR:

1.   Ms. Khan would like to inform the Court that some of the names listed as aliases on page 2 of the PSR were Ms. Khan's nicknames, or married names, or names that she used when she was involved with television production.

2.   Regarding the offense, Ms. Khan concurs only in those paragraphs that are consistent with the stipulated factual basis set forth in Ms. Khan's plea

1   agreement, and she disputes many of the immaterial facts that conflict with the

2   factual basis set forth in the plea agreement, including the following:

3           a.      Ms. Khan objects to the broad characterization in the PSR at

4   Paragraph 17 that she persuaded clients to purchase objects from her antique

5   business by making false representations.  Ms. Khan does not dispute the

6   facts stipulated in her plea agreement, but she objects to the intimation that

7   any other sales were based on false representations.  Ms. Khan has run a

8   legitimate antiques and decorating business for many years, and has many

9   satisfied customers.  (See e.g. Exhibit  A, June 15, 2101 Ltr. from G. Chanos,

10  former Attorney General for the State of Nevada, describing Ms. Khan's

11  business behavior as "evidencing a caring and compassionate soul, someone

12  who cared more about doing the right thing than making a sale."; Exhibit B,

13  06/18/2010 Ltr from C. Wood, former professional associate describing Ms.

14  Khan respecting her client's finances and, rather than going for the "quick

15  sale," working within the client's budget to select appropriate items.)

16          b.      In connection with the criminal history from 1959 that is

17  referenced in Paragraphs 56-58 of the Presentence Report, Ms. Khan offers

18  the following explanation to the Court:  At the time of the 1959 incident, over

19  50 years ago, Ms. Khan's employer repeatedly assured her that she would

20  have regular deposits made into her bank account.  Ms. Khan wrote checks

21  based on her belief that the deposits had been made.  When the deposits were

22  not made as promised, Ms. Khan's checks were denied for insufficient funds.

23  The "other arrests" referred to in paragraphs 64-66 were related to the charges

24  discussed in Paragraphs 56-58.

25          c.      Separately, the 1994 incident referenced in Paragraph 59 related

26  to difficulties between Ms. Khan and her then-bankruptcy attorney involving

27  a bounced check.

28          d.      Ms. Khan denies that she was arrested in Fresno in 1959, as

Defendant Tatiana Khan's Objections to the Presentence Report and Sentencing Position Paper

1    reflected in Paragraph 67.

2         e.    Ms. Khan wishes to clarify that she comes from a family of 7

3    girls and 2 boys, not 5 boys.  (PSR at ¶ 71.)

4         f.    Ms. Khan further wishes to correct the implication in the PSR at

5    ¶ 75 that Mr. Kim was a heavy smoker or alcoholic when she married him.

6    Mr. Kim developed these habits after they were married.

7         g.    The correct spelling of Ms. Khan's doctor, referred to in the PSR

8    at footnote 7 on page 17, is Doctor Payam Robert Yashar.

9         h.    Ms. Khan wishes the PSR's discussion on her previous

10   employment to reflect that from 1965-1980 she owned Tatiana's Interiors in

11   Sherman Oaks, California.

12        i.    Ms. Khan objects to the contention in the PSR at ¶ 95 and at

13   footnote 10 that she did not provide complete information regarding her assets

14   and liabilities.  At the time of the Presentence Interview, Ms. Khan provided

15   all of the documents that the Probation Officer requested.  The Probation

16   Officer requested certain additional documents that Ms. Khan did not have

17   with her at the time of the interview.  Ms. Khan's counsel made a list of all of

18   the items that the Probation Officer requested and thereafter supplied those

19   documents to the Probation Officer.  The Probation Officer never indicated to

20   counsel that any information remained outstanding or that Ms. Khan had

21   failed to supply required documents.

22   **IV.    A SENTENCE OF PROBATION IS APPROPRIATE**

23        In determining Ms. Khan's sentence, the Court will consider a broad range of

24   sentencing purposes, along with the advisory United States Sentencing Guidelines.

25   *United States v. Booker*, 543 U.S. 220, 245-46 (2005).  These statutory purposes are

26   delineated in 18 U.S.C. §§ 3553(a), 3582(a) and 3661.  The Court will impose a

27   sentence sufficient, but not greater than necessary, to achieve the objectives of

28   sentencing.  See 18 U.S.C. § 3553(a).  In fashioning the appropriate sentence, the

1  Court will evaluate myriad factors in relation to the facts of the case.  See 18 U.S.C.

2  § 3553(a)(1)-(7).  Several of these factors – set within the context of Ms. Khan's

3  case – are discussed below.

4         Ms. Khan requests that the Court grant Ms. Khan an 8-level variance for her

5  physical condition and for the need to provide her with medical care in the most

6  effective manner, and separately based on the circumstances of the offense and the

7  history and characteristics of Ms. Khan.  18 U.S.C. § 3553(a)(1) (circumstances of

8  the offense and nature and characteristics of the defendant); 18 U.S.C. §

9  3553(a)(2)(D) (need to provide the defendant with medical care in the most effective

10 manner).  The PSR recognizes that these factors may warrant a sentence outside the

11 advisory guideline range (PSR at ¶¶ 126, 127) and the Government has already

12 agreed, pursuant to the plea agreement, that a reduction in offense level is

13 appropriate based on Ms. Khan's poor health.

14    **A.    MS. KHAN'S SERIOUS MEDICAL CONDITIONS AND THE**

15           **NEED TO PROVIDE HER WITH MEDICAL CARE IN THE**

16           **MOST EFFECTIVE MANNER WARRANTS A VARIANCE**

17        Ms. Khan has a number of serious medical conditions, and she is in extremely

18 poor health.  In fact, her illness is so severe that the Probation Officer recognized

19 that Ms. Khan would be eligible for a downward departure under Guideline 5H1.4

20 based on her physical condition, despite the fact that this departure is authorized

21 only in very limited circumstances.  (PSR at ¶ 125.)  Both parties and the Probation

22 Officer recognize that, at a minimum, Ms. Khan's health supports a variance

23 pursuant to 18 U.S.C. § 3553(a)(2)(D).  (Plea Agreement at pg. 11, PSR at ¶ 127.)

24        Ms. Khan had a heart attack in 2007 and required coronary angioplasty.

25 (Exhibit C, 04/20/2010 Ltr from Alfredo Trento, Director of Cardiothoracic Surgery

26 at Cedars-Sinai Medical Center.)  Ms. Khan's physician describes her condition as

27 follows:

28

1      Since then Ms. Khan has experienced deterioration in her
2      cardiovascular status.  She had a pulmonary embolism several months
3      later.  She underwent open heart surgery with aortic and mitral valve
4      replacement as well as coronary artery bypass in November 2007.
5      This was complicated post-operatively by an irregular heart beat
6      (atrial fibrillation) with blood clots that were documented in the upper
7      chamber of her heart.

8  (Exhibit D, 04/23/2010 Ltr from Dr. Payam R. Yashar of the Beverly Hills Heart
9  Center.)

10      In addition to Ms. Khan's serious heart condition, Ms. Khan also has an
11  "underlying pulmonary disorder."  (Exhibit D, 04/23/2010 Ltr from Dr. Payam R.
12  Yashar of the Beverly Hills Heart Center.)  Ms. Khan's heart problems, especially
13  when coupled with her respiratory difficulties, cause Ms. Khan, in the words of one
14  of her medical professionals, to be "a very ill person indeed." (Exhibit E,
15  06/24/2010 Ltr. from M. Frick, RRT, RCP.)  Now, "breathing has become Tatiana's
16  fulltime job."  (Exhibit E, 06/24/2010 Ltr. from M. Frick, RRT, RCP.)

17      Environment is a critical factor to Ms. Khan's wellbeing.  As described by her
18  registered respiratory therapist:

19      Tatiana is further tortured by an additional pulmonary condition
20      called "hyperactive airway disease."  Her pulmonary airways become
21      even smaller, more restricted, in response to an inhaled irritant.  An
22      "inhaled irritant" can be of many different forms – be it dust, pollen,
23      household cleaners, bleach, petroleum products, car exhaust, aerosols
24      of any kind, or even perfume can be the trigger for further severe and
25      immediate respiratory distress.  Tatiana must limit such respiratory
26      attacks by eliminating all possible irritants from her living
27      environment, because for her this is a matter of life or death.

28

Defendant Tatiana Khan's Objections to the Presentence Report and Sentencing Position Paper

(Exhibit E, 06/24/2010 Ltr. from M. Frick, RRT, RCP.)  Dr. Yashar explains, "I do not believe that she can travel long distances on a daily basis and believe it may be detrimental for her to be away from her home for extended periods of time." (Exhibit D, 04/23/2010 Ltr from Dr. Payam R. Yashar of the Beverly Hills Heart Center.)

Ms. Khan's doctor describes her overall health condition as "frail and delicate," something that is immediately apparent to the casual observer.  (Exhibit D, 04/23/2010 Ltr from Dr. Payam R. Yashar of the Beverly Hills Heart Center.) . As the Probation Officer noted, Ms. Khan traveled to the Presentence Interview with an oxygen supply, which she was required to use at the conclusion of her interview. (PSR 86.)  Even the casual observer can tell that Ms. Khan has "difficulty breathing" and looks much older than her 70 years.  (Exhibit A, 06/15/2010 Ltr. from G. Chanos.)  Ms. Khan's son describes her medical problems as "devastating" and explains "the recovery she is attempting at this time is intermittent at best, but so far has been achieved mostly through the power of positive attitude sustained in a serene environment." (Exhibit F, 06/09/2010 Ltr. from J. Vega.)   Ms. Khan's sister explains that she is "frail and both physically and emotionally incapable of surviving any form of imprisonment."  (Exhibit G, 06/07/2010 Ltr. from V. Rankin.)   All of these observations are readily observable, and it is clear that Ms. Khan would not survive any period of incarceration.

## B.   THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF MS. KHAN FURTHER SUPPORT A VARIANCE IN THIS CASE

Ms. Khan has had a long and difficult life, one which required her to make her own way with little or no support from a dysfunctional and abusive family.  Ms. Khan received no formal education, and at age fourteen, after her family became unable to feed her and her brother-in-law attacked her, Ms. Khan was forced to begin supporting herself.  (PSR at ¶¶ 72, 73.)  "This is a woman with a big heart,"

explains her sister Vel Richey Rankin, "who has built a respectable and successful life with help from no one; she is an exemplar of hard work and good will." (Exhibit G, 06/07/2010 Ltr. from V. Rankin.)

Despite the difficulties in her own life, Ms. Khan has reached out to those around her and has been a positive influence on many.  Ms. Khan's sister, Vel Richey Rankin, writes about how Ms. Khan has been "the family angel," and describes how "she's given large sums of money to a sister in Texas who had no job and no way of paying for her very costly cancer medication and treatment." (Exhibit G, 06/07/2010 Ltr. from V. Rankin.)  Courtney Carol Small writes about how Ms. Khan's kindness towards her, and her interest in her as a child, influenced her decision to study art and how "Tatiana always stressed the importance of knowledge and a good education.   Ms. Khan also contributed towards the college education of Ms. Small's children, and "has given the parents of many underprivileged children money for their schooling as well." (Exhibit M, 08/11/2010 Ltr from C. Small.)  The President of Foundation Management, Cheryl Simon, speaks highly of Ms. Khan's character, integrity and commitment to her community: "She has been charitable mostly to people she does not even know and this is the truest form of charity.  Her concern for others is admirable and unusual." (Exhibit I, 06/01/2010 Ltr. from C. Simon.)

Ms. Khan has reached out directly to assist the needy in her community, including helping an elderly woman who lived near her shop who was suffering from a terminal illness.  Carol Wood, a friend, writes: "Tatiana willingly shopped for her, gave her money and made numerous trips to the pharmacy for her." (Exhibit B, 06/18/2010 Ltr from C. Wood.)  "Through the years," writes Kathy Small, a friend of Ms. Khan's for over forty years," I have seen Tatiana's sensitivity and generosity to those in need.  She has helped orphans by giving them clothing and food.  She has helped the homeless on the street.  She would give furnishings to those who could not afford to buy them." (Exhibit H, 06/12/2010 Ltr. from K.

1   Small; see also Exhibit N, 08/02/2010 Ltr. from Salesian Missions in Haiti

2   recognizing her contributions.)

3        In her professional life, Ms. Khan has always been held in high regard.  Gary

4   Williams, who built Ms. Khan's antique store in the valley, explains that he did so

5   "on a handshake" and emphasizes that he "has never had a feeling that she was

6   anything other than completely honest in her dealings."  (Exhibit J, 06/29/2010 Ltr.

7   from G. Williams.)   "She is one of the hardest working people I know," writes

8   Kathy Small.  "Her career has been her life. . . . I have never known her to be

9   anything but honest, truthful and fair."  (Exhibit H, 06/12/2010 Ltr. from K. Small.)

10  Carol Wood, a professional associate and personal friend, writes of Ms. Khan's

11  commitment to her clients as well as their staff.  (Exhibit B, 06/18/2010 Ltr from C.

12  Wood.)  Ms. Simon agrees, "I have been a client and referred her to my closest

13  friends and business contacts and all have told me that she went above and beyond

14  to make them happy."   (Exhibit I, 06/01/2010 Ltr. from C. Simon.)  Another

15  associate, Carlos Herrera, who has known Ms. Khan for more than thirty years,

16  describes her as "a woman that I always admire, hard worker, honest and always

17  such a good person."  (Exhibit K, Ltr. from C. Herrera.)  Another former client,

18  Dino Certo, describes how he gave Ms. Khan his antiques to sell and not only did

19  she advance him payment but, when the pieces sold for more than the price

20  originally agreed upon, she paid him the balance.  "[T]his alone showed me that I

21  was dealing with someone whom I could count on and was very honest."  (Exhibit

22  L, 06/11/2010 Ltr. from D. Certo.)

23       Ms. Khan has only one son, Jaime Vega, with whom she is extremely close

24  and for whom, despite her own serious health issues, she provides a great deal of

25  support.  Mr. Vega suffers from prostate problems, chronic obstructive pulmonary

26  disease, emphysema, and reactive airways disease.  (PSR at ¶ 76.)  Mr. Vega

27  explains:  "Due to a series of motorcycle accidents and work related injury, I happen

28  to be the most costly of burdens for mom. . . . It is now painfully apparent that my

inability to work has placed a greater burden on my mother than I could ever have imagined."  (Exhibit F, 06/09/2010 Ltr. from J. Vega.)

## C. JUST PUNISHMENT, DETERRENCE, PUBLIC PROTECTION AND EFFECTIVE CORRECTIONAL TREATMENT ARE ALL SERVED BY A SENTENCE OF PROBATION

A sentence of probation would provide just punishment, afford adequate deterrence, protect the public and provide Ms. Khan effective correctional treatment.  See 18 U.S.C. §§ 3553(a)(2)(A)-(D).  Ms. Khan has already suffered significantly as a result of the offense, for which there was wide media coverage.  As Mr. Chanos writes, "Tatiana Khan's professional life is over.  The business and reputation which she spent 40 years building can never be rebuilt.  The economic and reputational injury she has inflicted on herself, together with its corresponding effect on her health, constitutes a punishment in need of no enhancement."  (Exhibit A, 06/15/2010 Ltr. from G. Chanos.)  The United States Probation Office will impose various requirements on Ms. Khan, and closely monitor her activities.  For someone who has never been incarcerated, the rigors of probation will be a sufficient deterrent and a probation sentence is all the correctional treatment needed by Ms. Khan.

## V. CONCLUSION

Based upon the foregoing, and considering the full range of factors, it is respectfully requested that the Court sentence Ms. Khan to probation.

Dated: September 21, 2010          LAW OFFICES OF JAMES W. SPERTUS


By:   /S_____
James W. Spertus
Amanda R. Touchton
Attorneys for Tatiana Khan

# EXHIBIT A

**EXHIBIT A**

**George J. Chanos, Esq.**
**2813 Soaring Peak**
**Henderson, NV 89052**


June 15, 2010


Honorable Manuel Real, Judge
United States District Court
312 North Spring Street
Los Angeles, CA 90012

Dear Judge Real:

My name is George J. Chanos and I am writing this letter in support of Tatiana Khan.

By way of background, I am a member of both the California and Nevada bars and formerly served as Nevada's 31st Attorney General.

I have only known Ms. Khan for several months. However, in the brief time I have known her, she has so impressed me that I felt it not only appropriate but necessary to offer whatever assistance I could in her tragic time of need.

I first met Ms. Khan in March of this year. I was traveling down La Cienega Boulevard and I spotted her shop. The concrete and marble figures out in front of her shop looked as if they might be appropriate for a retail store I was planning on opening.

As I approached the store, I saw an elderly woman hunched over watering the dirt off of her sidewalk. She was having difficulty breathing and had a breathing tube running under her nose. She looked as if she were 90.

Our initial exchange went as follows. I remember it because it had an impact on me.

Me: "Are the statues in the yard expensive?"

Tatiana: "Not for what they are."

Me: "That means they're expensive."

Tatiana: "Tell me what you're looking for. How do you plan to use them?"

Me: "I hope to open a jewelry store and I'm trying to create a high-end design."

Honorable Manuel Real, Judge
June 15, 2010
Page 2

Tatiana: "Do you need real antiques or are you simply trying to create a look?"

Me: "I don't need real antiques. I'm just trying to create a look."

Tatiana: "Let me make some calls for you. I may know some dealers who have what you're looking for. They may even allow you to place some of their pieces in your jewelry store on consignment."

Me: "That would be incredible."

Tatiana: "I'll give you my number and you can call me this afternoon."

This is how my relationship with Tatiana Khan began. She did not try to sell me her antiques to satisfy her needs. Instead, she went out of her way to assist me, a total stranger, in meeting my needs while ignoring her own.

This selfless act made an important impression on me. It told me a lot about what kind of person Tatiana Khan really was. To me, it evidenced a caring and compassionate soul, someone who cared more about doing the right thing than making a sale. That impression stuck with me even after I later learned about the criminal charges then pending against her.

After spending more than an hour talking to Tatiana about my new store, it was clear to me that she was in very poor health. She could barely breathe and had great difficulty walking about the store.

It was only after I inquired about her condition that Tatiana informed me about the stress she was under from her pending criminal indictment and imminent trial date. She knew nothing about my background at this time and therefore had absolutely nothing to gain from this disclosure. It simply weighed so heavily on her that she must have felt the need to unburden herself. I couldn't believe what I was hearing.

How could this lovely and frail old woman (I still thought she was 90) be charged with a crime?

Your Honor, I respectfully submit that imprisonment of this exceedingly frail and elderly woman, for any length of time, will not serve the interest of justice, the victim in this case or the community at large.

Tatiana Khan's professional life is over. The business and reputation which she spent 40 years building can never be rebuilt. The economic and reputational injury she has inflicted upon herself, together with its corresponding effect on her health, constitutes a punishment in need of no enhancement.

Honorable Manuel Real, Judge
June 15, 2010
Page 3

The victim needs and deserves restitution. He gains nothing from her incarceration.

The federal prison system, whose facilities are overcrowded with violent offenders and career criminals, can certainly do without the added cost and liability of caring for an elderly and infirm, non-violent, first-time offender.

In sum, your Honor, I join with Tatiana's family and friends and ask for mercy on her behalf. I believe she has already suffered enough for her mistake. More importantly, given what I have personally observed of her physical condition and acute anxiety, I fear that any incarceration may very well constitute a death sentence in this case.

Clearly, such a result would be contrary to the interests of justice and all those affected by this tragic lapse in judgment.

Thank you for your consideration of this letter of support.

Very truly yours,

George J. Chanos, Esq.

# EXHIBIT B

**EXHIBIT B**

Carol W. Wood                                    June 18, 2101

3705 Bellevue Road

Raleigh, N.C 27609


Honorable Manuel Real, Judge

United States District Court

312 N. Spring Street

Los Angeles, Ca. 90012


Honorable Manuel Real,

Please accept this letter on the behalf of Tatiana Kahn. It has been my pleasure to
have worked with her professionally on several interior design projects over the
past seven years. Beyond our professional collaboration our relationship has grown
and evolved into friendship.

In addition to caring for her son and operating her business, Tatiana has always
found time to get involved in life around her. Unlike many people these days,
whenever she adopts a cause or pursues a new interest she is guaranteed to be
highly committed.

When we met I was attending UCLA's Extension school in architecture and Interior
Design. We were both working for the same couple that had a home in Beverly Hills
and an estate in Hidden Hills. My responsibilities were to photograph potential
furnishings in shops around town and sketch the completed proposed project.
Tatiana had beautiful pieces to work with in her shop and we worked well together.
We have had the opportunity to work together on several projects since and I count
her a valuable friend as well as a valuable resource for the unique and unusual.

I watched Tatiana take a deep interest in the lives of many of the people she has
designed for as well as their staff. Sometimes on my trips to her shop, I noticed she
spent additional hours helping a woman who lived close to her shop on La Cienega.
The woman was suffering with a terminal illness. Tatiana willingly shopped for her,
gave her money and made numerous trips to the pharmacy for her. By example,
Tatiana has shown me not only that she values helping others, but also she lives a
life of loyalty and commitment.

Tatiana is also a problem solver. Much thought goes into the things Tatiana does, and she has a unique ability to design and furnish homes with integrity.

A few times I accompanied Tatiana to provide photography or quick sketches for her and her clients. This afforded me the opportunity to observe Tatiana's interaction with her clients. I remember one woman that liked one of the pieces in Tatiana's shop. The scale and style of the piece was out of place and over scale for her client's home and budget. Rather than 'go for the quick sale' Tatiana worked within the client's budget and offered two alternative smaller and less expensive pieces that really looked great in the room. Tatiana created a beautiful, cohesive room with furnishings the client really loved.

One day when I stopped by her shop to take her to lunch and ask her guidance on a project I was working on, a client of hers called. The woman asked Tatiana to bring an antique wall-mounted light fixture the client had seen in Tatiana's shop over to the job site so she could show her husband. We packed the fixture carefully into my car and dropped the piece off with the client on our way to lunch. After lunch, I realized I had left my sketchbook so Tatiana suggested we go by the woman's home and when we arrived at the job site we found an ironworker tracing and measuring the fixture. When Tatiana asked him in Spanish what he was doing, he explained he had directions to reproduce it. When the client walked in, Tatiana was firm and levelheaded. I will never forget that interaction Tatiana had with the client. She explained to her client the importance of working with integrity and establishing a level of trust. Rather than have the experience escalate into a scene, Tatiana took the time to explain to her client that she could not allow the piece to be copied. She was considerate but firm. She took the fixture, she asked the worker for the tracing I retrieved my sketchbook and we left the job site. I don't know how the interaction was ultimately resolved, but I admired Tatiana's 'grace' under pressure and her ability to state her case and explain her ethics.

I could continue with descriptions of Tatiana's many other good qualities- her work ethic, her energy and her creativeness to name three. Instead I would simply like to say how much I think of Tatiana and how strongly I recommend her for any task that requires integrity, honesty, problem solving and a high level of commitment.

It is my hope your decision and judgment will provide many of Tatiana's friends and clients the opportunity to continue professional and personal relationships with Tatiana, she is truly a woman whose friendship & talent enhances our quality of life.

Sincerely,

Carol W. Wood

# EXHIBIT C

**EXHIBIT C**



### CEDARS-SINAI MEDICAL CENTER.
**Division of Cardiothoracic Surgery**

April 20, 2010


RE:  Tatiana Kahn

To Whom It May Concern:

This letter is to certify that Tatiana Kahn underwent aortic and mitral valve replacement as well as a single graft coronary artery bypass surgery at Cedars-Sinai Medical Center on November 5, 2007.  Since her discharge I saw Tatiana once January 16, 2008 for consultation at which time she was complaining of shortness of breath.  I recommended for her follow up with her cardiologist and to continue her medical therapy.
Should you have any questions or require further information please do not hesitate to contact my office.

Sincerely,

Alfredo Trento, MD
Director, Cardiothoracic Surgery
Cedars-Sinai Medical Center

# EXHIBIT D

**EXHIBIT D**

**Beverly Hills Heart Center**

**PAYAM ROBERT YASHAR, M.D., INC.**
*Consultative Cardiology*
*Cardiac Electrophysiology*

April 23, 2010

To Whom It May Concern:

Ms. Tatiana Khan is a patient whom I have followed intermittently since February, 2007 when she experienced a heart attack and required coronary angioplasty. Since then, Ms. Khan has experienced a deterioration in her cardiovascular status. She had a pulmonary embolism several months later. She underwent open heart surgery with aortic and mitral valve replacement as well as coronary artery bypass in November 2007. This was complicated post-operatively by an irregular heartbeat (atrial fibrillation) with blood clots that were documented in the upper chamber of her heart. Ms. Khan also has an underlying pulmonary disorder, and would frequently report using home oxygen and nebulizer treatments. In all her visits, her most frequent complaint is shortness-of-breath and dyspnea. I believe her overall condition to be frail and delicate.

Sincerely,

Payam R. Yashar, M.D., F.A.C.C.

2080
Century Park East
Suite 1405
Los Angeles, CA
90067
Tel:
(310) 277-9440
Fax:
(310) 788-8477

# EXHIBIT E

**EXHIBIT E**

June 24, 2010

Honorable Manuel Real, Judge
United States District Court
312 North Spring Street
Los Angeles, California 90012

Re:   Tatiana Khan

Dear Judge Real,

My name is Michael Frick; I am a Registered Respiratory Therapist working at Cedars Sinai Medical Center in Los Angeles. Over my 25 year medical career, I have also worked for 10 years as a Perfusionist, operating a heart-lung machine for "open heart" surgical procedures. So although I may not be an MD, I have many years of medical experience which gives me the ability to assess the state of health of cardiac and pulmonary patients.

I have known Tatiana Khan for a few years now, and over this time I have found her to be a very compassionate, caring, generous, wise, and considerate person. She is near and dear to me because of these rare qualities.

I first met Tatiana at Century City Hospital in 2006 following her first heart attack. I was involved with her pulmonary care, and it was during her treatment sessions that I learned of her love for animals and nature. Since these topics are such a deep passion of mine, our friendship grew from this wonderful common ground.

I am writing on Tatiana's behalf because I care so much about her well being, and because I wish to inform you of Tatiana's state of health. Normally, the heart and lungs work in concert, but in the presence of cardiac or pulmonary disease, the patient's clinical appearance will often be the same – that appearance is often described as "respiratory distress." The patient will present with a noticeably increased respiratory rate along with an abnormal use of chest and shoulder muscles which are not normally used when a person is at rest. This "increased work of breathing" is the body's characteristic response as it tries to compensate for a significant loss of pulmonary or cardiac function. Combine the two diseases, as in Tatiana's case, and you have a very ill person in deed. Most patients like Tatiana would not have lived this long. So what we take for granted, easy breathing and a strong pumping heart, are now Tatiana's prayers. Energy, comfort, endurance are just memories for Tatiana as she struggles to take her next breath, and as she prays for another heart beat. Breathing has become Tatiana's full time job. Determination, her love of Life, and the Love of her son are the things which keep her living.

Sadly, it does not end here, as Tatiana is further tortured by an additional pulmonary condition called "hyperactive airway disease." Her pulmonary airways become even smaller, more restricted, in response to an inhaled irritant. An "inhaled irritant" can be of many different forms – be it dust, pollen, household cleaners, bleach, petroleum products, car

exhaust, aerosols of any kind, or even perfume can be the trigger for further severe and immediate respiratory distress. Tatiana must limit such respiratory attacks by eliminating all possible irritants from her living environment, because for her, this is a matter of life or death.

Judge, this unfortunate woman has been through so much pain and suffering in these waning years of her life – countless cardiac and respiratory crises, major open heart surgery, and her son's horrific industrial accident which has left him emotionally and financially dependent upon her – that I hope this world can now offer her some mercy.


Very truly,

*Michael Frick RRT, RCP*

Michael Frick, RRT, RCP

**George J. Chanos, Esq.**
**2813 Soaring Peak**
**Henderson, NV 89052**

June 15, 2010

Honorable Manuel Real, Judge
United States District Court
312 North Spring Street
Los Angeles, CA 90012

Dear Judge Real:

My name is George J. Chanos and I am writing this letter in support of Tatiana Khan.

By way of background, I am a member of both the California and Nevada bars and formerly served as Nevada's 31st Attorney General.

I have only known Ms. Khan for several months. However, in the brief time I have known her, she has so impressed me that I felt it not only appropriate but necessary to offer whatever assistance I could in her tragic time of need.

I first met Ms. Khan in March of this year. I was traveling down La Cienega Boulevard and I spotted her shop. The concrete and marble figures out in front of her shop looked as if they might be appropriate for a retail store I was planning on opening.

As I approached the store, I saw an elderly woman hunched over watering the dirt off of her sidewalk. She was having difficulty breathing and had a breathing tube running under her nose. She looked as if she were 90.

Our initial exchange went as follows. I remember it because it had an impact on me.

Me: "Are the statues in the yard expensive?"

Tatiana: "Not for what they are."

Me: "That means they're expensive."

Tatiana: "Tell me what you're looking for. How do you plan to use them?"

Me: "I hope to open a jewelry store and I'm trying to create a high-end design."

Honorable Manuel Real, Judge
June 15, 2010
Page 2

Tatiana: "Do you need real antiques or are you simply trying to create a look?"

Me: "I don't need real antiques. I'm just trying to create a look."

Tatiana: "Let me make some calls for you. I may know some dealers who have what you're looking for. They may even allow you to place some of their pieces in your jewelry store on consignment."

Me: "That would be incredible."

Tatiana: "I'll give you my number and you can call me this afternoon."

This is how my relationship with Tatiana Khan began. She did not try to sell me her antiques to satisfy her needs. Instead, she went out of her way to assist me, a total stranger, in meeting my needs while ignoring her own.

This selfless act made an important impression on me. It told me a lot about what kind of person Tatiana Khan really was. To me, it evidenced a caring and compassionate soul, someone who cared more about doing the right thing than making a sale. That impression stuck with me even after I later learned about the criminal charges then pending against her.

After spending more than an hour talking to Tatiana about my new store, it was clear to me that she was in very poor health. She could barely breathe and had great difficulty walking about the store.

It was only after I inquired about her condition that Tatiana informed me about the stress she was under from her pending criminal indictment and imminent trial date. She knew nothing about my background at this time and therefore had absolutely nothing to gain from this disclosure. It simply weighed so heavily on her that she must have felt the need to unburden herself. I couldn't believe what I was hearing.

How could this lovely and frail old woman (I still thought she was 90) be charged with a crime?

Your Honor, I respectfully submit that imprisonment of this exceedingly frail and elderly woman, for any length of time, will not serve the interest of justice, the victim in this case or the community at large.

Tatiana Khan's professional life is over. The business and reputation which she spent 40 years building can never be rebuilt. The economic and reputational injury she has inflicted upon herself, together with its corresponding effect on her health, constitutes a punishment in need of no enhancement.

Honorable Manuel Real, Judge
June 15, 2010
Page 3

The victim needs and deserves restitution.   He gains nothing from her incarceration.

The federal prison system, whose facilities are overcrowded with violent offenders and career criminals, can certainly do without the added cost and liability of caring for an elderly and infirm, non-violent, first-time offender.

In sum, your Honor, I join with Tatiana's family and friends and ask for mercy on her behalf. I believe she has already suffered enough for her mistake. More importantly, given what I have personally observed of her physical condition and acute anxiety, I fear that any incarceration may very well constitute a death sentence in this case.

Clearly, such a result would be contrary to the interests of justice and all those affected by this tragic lapse in judgment.

Thank you for your consideration of this letter of support.

Very truly yours,

George J. Chanos, Esq.

# VEL RICHEY-RANKIN

7th June, 2010

Honorable Manuel Real, Judge
United States District Court
312 North Spring Street
Los Angeles, CA 90012

Regarding Tatiana Khan

I am recently retired from my former position as Global Creative Partner with Ogilvy & Mather in New York.

Tatiana Khan is my sister. (She is the 6th of nine children; I am the 9th.)

I am writing this letter because I feel obliged to share some information with you, viz: Over the past 50 years, as I have come to know Tatiana, not just as a sister, but as a human being, I have been repeatedly moved, impressed, and frankly, awed by her charitable and selfless acts. As noted, she has many siblings. All were born poor, and most remained poor throughout their lives. Tatiana has provided support for virtually each and every one of them -- including me. She has been 'the family angel.' She's given large sums of money to a sister in Texas who had no job and no way of paying for her very costly cancer medication and treatments. She has given equally large sums of money to a brother in California who was unable to work, and about to lose his house. When I was in college and was struggling to make ends meet on a meager scholarship, she helped me. The list is endless. And includes not only family members, but countless others. Her largesse and altruism -- and at times, self-sacrifice -- for the needy is notable. Yet she's never asked for or expected repayment. And never resented doing any of it.

I know her to be a caring, conscientious, honest, magnanimous, sensitive person. I also know her to be in ill health, frail, and both physically and emotionally incapable of surviving any form of imprisonment. It would be a tragedy of profound proportions. Not only for Tatiana, but for her remaining siblings, her son, and the many individuals in the community who have been touched by her inspiration and strength of character.

This is a woman with a big heart, who has built a respectable and successful life with help from no one; she is an exemplar of hard work and good will. By virtue of how she has lived her life, and all that she has done to help others live their lives, I beg you to show her mercy and compassion. I swear to you that our world could use more Tatianas.

Thank you for listening.

TELEPHONE: (505) 989-5677

*1 of 2*

*Dear Aunt Tatiana,*

*As promised, here is the paperwork that Dennis Graff sent to me. I had so hoped that I could find someone through my attorney friend who would look at this and find something amiss with it before I called you to discuss it; I could hardly bear the thought of calling you to explain that getting someone to be accountable and responsible for Jimmy's UNNECESSARY death was unachievable – without also being able to offer at least a glimmer of hope.*

*May this letter finds you well with God's healing hand ever upon you. I would like to plan on coming out and meeting you in person sometime this fall or early winter. My daughter Terra is getting remarried in October (such an incredibly nice young man!), so for now my extra hours (and what extra energy I have) are going to be spent working on making some of the hors d'oeuvres and desserts for her special day, since we're doing the wedding ourselves (caterers are SO darned expensive these days), but perhaps sometime after that I could come visit?*

*Thank you again for all you did for my father Jimmy. I really had no idea what kind of desperate financial situation he was in – and how you had been there supporting him for so long. You are indeed living God's word and sharing His blessings. I can't express to you how deep my gratitude runs, for all you did for Jimmy – and all the love you showered him with.*

*Please let me know if there is anything else I can do. My prayers and God's blessings are with you!*

*Lovingly,*

# NEPTUNE SOCIETY

of Riverside & San Bernardino
**FD 1307**

Telephone (951) 359-2021 • Fax (951) 359-8607
P.O. Box 4261 • Riverside, CA 92514

Date: _02/05/2008_

| | | |
|---|---|---|
| Professional Services for _JAMES R. RICHEY, JR._ | $ | _700.00_ |
| Removal Charge | $ | _345.00_ |
| Death Certificates at $ _12.00_ each _2 ORDERED_ | $ | _24.00_ |
| Other services _DISPOSITION PERMIT (COUNTY CHARGE)_ | $ | _11.00_ |
| _KEEPSAKE URN_ | $ | _45.00_ + TAX |
| _RIVERSIDE CORONER TRANSPORTATION FEE_ | $ | _216.00_ |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |

CK. NO. _VISA_
DATE _02-19-2008_

Sales Tax $ _3.48_
TOTAL CHARGES $ _1344.48_
Paid $ _1344.48_

Payment Provision _Paid By Tatiana Kitaev Khan Sister_

Balance Due $ _∅_

Services requested other those listed will be added.

The undersigned hereby authorize the above services and agrees to pay upon receipt of statment for said services without regard to any insurance payments or other financing agreements.

For more information on cremation matters, contact: Department of Consumer Affairs, Cemetery and Funeral Bureau, 1625 North Market Blvd., Suite S-208, Sacramento, CA 95834. (916) 574-7870

The above services were authorized by:

| _CANDY E. LESCHER_ | _DAUGHTER_ |
|---|---|
| **Name** | **Relationship** |
| _1223 EAST EL PARQUE DRIVE_ | _602/499-3325_ |
| **Address** | **Telephone** |
| _TEMPE_          _ARIZONA_ | _85282_ |
| **City**          **State** | **Zip** |

# WILLIAMS SPECIALTY CONSTRUCTION
4027 EAST BOULEVARD • LOS ANGELES, CALIFORNIA 90066 • (310) 398-2548 • LICENSE NO. 250203

June 29, 2010

The Honorable Judge Manuel Real
312 North Spring Street
Los Angeles, California

Re: Tatiana Khan

Judge Real,

Have you ever wondered why some things happen in our lives? What
power guides us at certain times? I have and today is one of those
times. I had business in The Valley and chose to go by surface
streets rather than the freeways which I normally do. I happened
to go by Tatiana's shop and something told me to go back and see
if she was in. She was and during our visit she told me about her
case. So this is a small note that comes from my heart.

I met Tatiana around 1979. I had gone into her shop when she was
located on Ventura Boulevard, in Sherman Oaks. We became aquainted
and I later built a new shop for her. She has since become a family
friend.
To show you the type of person that I believe her to be, I built
her shop on a hand shake agreement. And have purchased several items
for my home since. I have never had a feeling that she was anything
other than completely honest in any dealings. Whether friend or
business.

Thank you for taking your time to read this, I do believe that today
is one of those days that a greater power took me to see her.

It is my hope that this note may be of some help in making your
decision.

Sincerely,

Gary Williams



July 11, 2010


Honorable Manuel Real, Judge
United States District Court
312 North Springs Street
Los Angeles, California 90012

Re: Tatiana Kahn

Dear Judge Real,

    I am a resident of Los Angeles for the last 30 years.  In 1994, during our last recession, I lost everything including my home and my business.  All I had left was the contents of my home, which included a lot of valuable antiques and furniture.  This was the first time I met Tatiana Kahn, she had this antique store on La Cienega Blvd with the most beautiful European antiques I've ever seen.  She went out of her way to find a home for my special pieces.  She was kind enough to give me advance payment before she sold anything, and then sold things for more then she had quoted, so this alone showed me that I was dealing with someone whom I could count on and was very honest.  Needless to say I was grateful, and this was the beginning of our friendship.  Over the years since, I went back in business and we have been in touch ever since.  We have both recommended clients to each other.  In spite of her failing health, she always made herself available to me.  I don't know what I would have done for money after my loss.  Thanks to her advance payments and full payments I was able to sustain myself.

    This problem that has come up now involving her has to be the most ridiculous thing I have ever heard.  Not to my surprise, she mentioned that she's taken full responsibility, which in my opinion speaks a lot for her integrity!  She says it's in Gods hands.

Sincerely yours,

Dino Certo

# EXHIBIT F

**EXHIBIT F**

Jaime Vega                                                    page 1 of 2
815 N. La Cienega Blvd.
Los Angeles, CA 90069
(310) 657-7259
June 9, 2010


Honorable Manuel Real, Judge
United States District Court
312 North Spring Street
Los Angeles, CA 90012


Your Honor,


In regard to my mother, Tatiana Khan; I know her to be caring, giving
and kind.  Putting my aunt through college and charity donations are but
a few generalized examples.  As a matter of fact, several of my aunts
and uncles have benefited from her financial assistance when they needed
it the most.

Due to a series of motorcycle accidents and a work related injury, I
happen to be the most costly of burdens for mom.

Before my progression to management level, I mixed all the chemistry
for Alexander & Ishihara Color Laboratories.  It is only with the benefit
of hindsight that the very idea is unthinkable; but before OSHA
implemented strict standards, the use of items such as full face
respirators with properly rated filter cartridges were the exception
rather than the rule.  Years later, as the damage became more acute, it
has been my mother who has researched the best options to address that
damage and effect a proactive and comprehensive recovery.

The first time my mother came to my rescue, I was somewhere around three
or four years of age.  I took a tumble and landed head first on a cemented
cornerpiece.  It was a very serious head injury.  As some folks will do
when challenged with unusual circumstances, the lone employee at the
business location where this occured; froze.

It was early afternoon, no pedestrians in the immediate vicinity, no
customers inside the ice cream parlor mom was taking me to; just that lone
employee.  Mom asked him to call for help, but he seemed content as a
spectator.  Not for long.  Not with my mom.

"Enlightened" from his ghoulish reverie, convinced it was in his own best
interest to place the call; he did so, with alacrity.

Seconds later, spotting a police cruiser headed our way, mom ran out into
the roadway to block its path.  Covered in blood,sprawled out on the hood
of their patrol car, she got the attention of the officers inside.  We
were promptly placed in the back of the patrol car and rushed to a nearby
hospital.

Honorable Manuel Real, Judge                              page 2 of 2
United States District Court
312 North Spring Street
Los Angeles, CA 90012


regarding: Tatiana Khan   continued


In spite of the horrendous nature of my injury, I made a full recovery.
This is because when faced with an extreme situation, for my benefit, my
mother responded in kind and facilitated exactly what was needed: an
immediate response.

My mothers own medical problems have been devastating.  The recovery she
is attempting at this time is intermittent at best, but so far has been
achieved mostly through the power of positive attitude sustained in a
serene environment.  My mothers age and the fragility of her current
health makes me fearful when considering she could be removed from this
environment.

As I am sure Your Honor is aware, a single mom raising a child on her
own is no small feat.  I was always her top priority.  I never had want
or need of anything.  Genuine parental love like that can only be
generated by the highest calibur of human character.

It is now painfully apparent that my inability to work has placed a
greater burden on my mother than I could ever have imagined.

Tatiana Khan is a good and kind person.  Raising me and being more than
generous to family and friends alike, I know that given the opportunity,
my mother will make right by her name and the industry she has loved
for so many years.


Sincerely,


Jaime Vega

# EXHIBIT G

**EXHIBIT G**

# VEL RICHEY·RANKIN

7th June, 2010

Honorable Manuel Real, Judge
United States District Court
312 North Spring Street
Los Angeles, CA 90012

Regarding Tatiana Khan

I am recently retired from my former position as Global Creative Partner with Ogilvy &
Mather in New York.

Tatiana Khan is my sister.  (She is the 6th of nine children; I am the 9th.)

I am writing this letter because I feel obliged to share some information with you, viz:
Over the past 50 years, as I have come to know Tatiana, not just as a sister, but as a
human being, I have been repeatedly moved, impressed, and frankly, awed by her
charitable and selfless acts.  As noted, she has many siblings.  All were born poor, and
most remained poor throughout their lives. Tatiana has provided support for virtually
each and every one of them -- including me.  She has been 'the family angel.'  She's
given large sums of money to a sister in Texas who had no job and no way of paying for
her very costly cancer medication and treatments.  She has given equally large sums of
money to a brother in California who was unable to work, and about to lose his house.
When I was in college and was struggling to make ends meet on a meager scholarship,
she helped me.  The list is endless.  And includes not only family members, but countless
others.  Her largesse and altruism -- and at times, self-sacrifice -- for the needy is notable.
Yet she's never asked for or expected repayment.  And never resented doing any of it.

I know her to be a caring, conscientious, honest, magnanimous, sensitive person. I also
know her to be in ill health, frail, and both physically and emotionally incapable of
surviving any form of imprisonment.  It would be a tragedy of profound proportions. Not
only for Tatiana, but for her remaining siblings, her son, and the many individuals in the
community who have been touched by her inspiration and strength of character.

This is a woman with a big heart, who has built a respectable and successful life with
help from no one; she is an exemplar of hard work and good will.  By virtue of how she
has lived her life, and all that she has done to help others live their lives, I beg you to
show her mercy and compassion.  I swear to you that our world could use more Tatianas.

Thank you for listening.

*Vel Richey-Rankin*

# R R
# DOS ERES
TELEPHONE: (505) 989-5677
FAX: (505) 982-9252
172 ARROYO HONDO TRAIL · SANTA FE · NEW MEXICO  87508

# EXHIBIT H

**EXHIBIT H**

June 12, 2010

Honorable Manuel Real, Judge
United States District Court
312 North Spring Street
Los Angeles, California 90012

Re:   Tatiana Khan

Dear Judge Real,

I am a resident in the Los Angeles are and have been selling real estate since 1971. I also have a business, L.A. Residence, where I lease short term furnished apartments in West Hollywood and Beverly Hills.

I have known Tatiana Khan for over 40 years. I met her when she had a beautiful antique store in Sherman Oaks. She became a dear friend and confidant. We were young then and through the years shared our joys, hardships and life's experiences. I know her as only dear, close friends know each other's hearts. She is a good, honest and giving person. I have seen this first hand and I know it to be true.

I will always be grateful to her as she was so kind and loving to my mother. When my mother became ill with cancer, Tatiana was always there to help her, console her and, most important, give up hours of her busy schedule simply to listen to her.

Through the years I have seen Tatiana's sensitivity and generosity to those in need. She has helped orphans by giving them clothing and food. She has helped the homeless on the street. She would give furnishings to those who could not afford to buy them. I have witnessed all of this and so much more. If all people were like Tatiana, what a wonderful world it would be!

She is also one of the hardest working people I have ever known. Her career has been her life. She is incredibly talented leaving a trail of beauty wherever she works. It was rare, if ever, that she took a vacation or any time off in spite of her health problems. I only remember one day she was not working and that was when she visited me at a cabin I had in Lake Arrowhead. This was back in the early 1980's.

I have never known her to be materialistic. She lives quite frugally and has never been interested in "things" for herself such as expensive clothes, jewelry, cars, etc. Her work was never about the money. Her reward has been the joy and happiness from bringing beauty into other people's homes and gardens. Her client's gratitude has always meant far more than her fee.

I know many antique dealers in the Los Angeles area. They know Tatiana and I are friends. Whenever I see them, they always ask how she is doing and tell me how they care about her as well as so many stories of her kindness and generosity.

I have never known her to be anything but honest, truthful and fair. What has happened is totally incomprehensible to me. It is completely out of character to the Tatiana I truly know. I am sure there is more to this story that may never be told, but imprisonment would be a horrific tragedy not only to her, but also to the community she has helped and the multitude of people who love her.

For all these years she has been an inspiration to me and I am grateful and proud that she is my friend.

Very truly,

Kathy Small

# EXHIBIT I

**EXHIBIT I**



# FOUNDATION MANAGEMENT

June 1, 1010

Honorable Judge Manuel Real
312 North Spring Street
Los Angeles, CA 90012

Dear Judge Real:

My name is Cheryl Zoller Simon, President of Foundation Management. I manage private family foundations for over 20 years.

I have known Tatiana Khan for 25 years and I can tell you with my whole heart that she is a very honest and true person. They do not make people more real than Tatiana Khan.

I have been a client and referred her my closest friends and business contacts and all have told me that she went above and beyond to make them happy. I can tell you that she would never tell you what you want to hear, but what she believes and always with the utmost integrity.

Over the past several years her health has been deteriorating and she has never complained but always been concerned for others above herself.

She has been very charitable mostly to people she does not even know and this is the truest form of charity. Her concern for others is admirable and unusual.

I can tell you that her character and reputation is held in the highest regard.

This act of which she has been accused is indeed out of character and one I do not understand, but to have her incarcerated would be a death sentence.

Please feel free to contact me should you wish.

Sincerely,

Cheryl Zoller Simon

# EXHIBIT J

**EXHIBIT J**

# WILLIAMS SPECIALTY CONSTRUCTION
4027 EAST BOULEVARD • LOS ANGELES, CALIFORNIA 90066 • (310) 398-2548 • LICENSE NO. 250203

June 29, 2010


The Honorable Judge Manuel Real
312 North Spring Street
Los Angeles, California


Re: Tatiana Khan

Judge Real,

Have you ever wondered why some things happen in our lives? What
power guides us at certain times? I have and today is one of those
times. I had business in The Valley and chose to go by surface
streets rather than the freeways which I normally do. I happened
to go by Tatiana's shop and something told me to go back and see
if she was in. She was and during our visit she told me about her
case. So this is a small note that comes from my heart.

I met Tatiana around 1979. I had gone into her shop when she was
located on Ventura Boulevard, in Sherman Oaks. We became aquainted
and I later built a new shop for her. She has since become a family
friend.
To show you the type of person that I believe her to be, I built
her shop on a hand shake agreement. And have purchased several items
for my home since. I have never had a feeling that she was anything
other than completely honest in any dealings. Whether friend or
business.

Thank you for taking your time to read this. I do believe that today
is one of those days that a greater power took me to see her.

It is my hope that this note may be of some help in making your
decision.

Sincerely,

Gary Williams

# EXHIBIT K

**EXHIBIT K**

Carlos Herrera
Fatima Herrera

Office 818-504-6113
Fax 818-504-6132

# C.F. ANTIQUES RESTORATION
### Custom Lighting & Furniture

8600 Lankershim Blvd. • Sun Valley, CA 91352
Email: herreraantiques@aol.com

Page 1 of 1

Honorable Judge Manuel Real
312 North Spring Street
Los Angeles, Ca. 90012

Dear Judge:
My name is Carlos Herrera, my work is Antiques restorer and installer, for more than 30 years.
I have known Tatiana Khan more than 25 years, a woman that I always admire, hard worker, honest, and always such a good person, anytime some one is in need she is there, I'm writing this letter to you hoping to express my feelings for a lady that always shows her good behavior and hard work, and very concern of her poor health.
Please if you have any question about please feel free to contact me.

Carlos Herrera
8600 Lankershim bl. Sun Valley, Ca. 91352
tel. 818-504-6113 Cel. 818-381-1312 fax 818-504-6132

# EXHIBIT L

**EXHIBIT L**



July 11, 2010

Honorable Manuel Real, Judge
United States District Court
312 North Springs Street
Los Angeles, California 90012

Re: Tatiana Kahn

Dear Judge Real,

     I am a resident of Los Angeles for the last 30 years.  In 1994, during our last recession, I lost everything including my home and my business.  All I had left was the contents of my home, which included a lot of valuable antiques and furniture.  This was the first time I met Tatiana Kahn, she had this antique store on La Cienega Blvd with the most beautiful European antiques I've ever seen.  She went out of her way to find a home for my special pieces.  She was kind enough to give me advance payment before she sold anything, and then sold things for more then she had quoted, so this alone showed me that I was dealing with someone whom I could count on and was very honest.  Needless to say I was grateful, and this was the beginning of our friendship.  Over the years since, I went back in business and we have been in touch ever since.  We have both recommended clients to each other.  In spite of her failing health, she always made herself available to me.  I don't know what I would have done for money after my loss. Thanks to her advance payments and full payments I was able to sustain myself.

     This problem that has come up now involving her has to be the most ridiculous thing I have ever heard.  Not to my surprise, she mentioned that she's taken full responsibility, which in my opinion speaks a lot for her integrity!  She says it's in Gods hands.

Sincerely yours,

Dino Certo

9601 Wilshire Boulevard ❖ Suite 1145 ❖ Beverly Hills, California 90210 U.S.A.
Tel/Fax 818.528.3676 ❖ Cell 310.890.0440 ❖ Italy Cell 0333.668.3571

# EXHIBIT M

**EXHIBIT M**

Courtney Carol Small
7664 Hollywood Blvd.
Los Angeles, CA 90046
323.850.0866

August 11, 2010

To Whom It May Concern:

I have known Tatiana Kahn since I was a child. I used to go into her antique store and wonder at all the "old things" and be amazed at their beauty. She was always very kind and gentle to me and was never afraid that I would break anything. She treated me with respect, which is very rare for an adult with a child in an antique store. I felt even then that she appreciated my interest in all the beautiful objects. She would patiently explain what they were and their use and history and I would gobble it all up. I am sure all the time spent with her influenced my decision many years later to study in Paris and my choice of a degree in Art History. Tatiana always stressed the importance of knowledge and a good education.

More recently, when my children were born, instead of the usual baby gifts of clothes or toys, she gave them money for college. I remember my mom telling me that Tatiana has given the parents of many underprivileged children money for their schooling as well.

Tatiana Kahn is a good, kind and giving person and I am grateful that she has been a big part of my life.

Sincerely,

Courtney Carol Small

# EXHIBIT N

**EXHIBIT N**



**salesian missions**

2 Lefevre Lane • New Rochelle, NY 10801-5710
(914) 633-8344 • www.salesianmissions.org

August 2, 2010

*Tatiana Khan*
*815 N La Cienega Blvd*
*Los Angeles, CA 90069*

Dear Tatiana,

On behalf of Salesian Missions and our students in Haiti, thank you for your generosity and thank you for your prayers.

As one of our dearest friends, you know we have been caring for the children of Haiti long before the earthquake occurred and that your support has been crucial in sustaining our life-changing programs in this island nation.

You see, before the January earthquake, homelessness was already a major problem in Port-au-Prince. That is why, in addition to the schools we operated, we provided shelters for homeless youth and feeding programs to give children and their families the chance to transform their lives.

Sadly, our buildings that symbolized rays of hope collapsed and many of our students and personnel were buried in the rubble.

The surviving children – who were once housed by Salesian Missions – are still being cared for under *very* challenging conditions. And while we are working to tend to their immediate needs, we are already planning to rebuild… to provide shelter and education once again to the homeless youth.

But we can't do it alone.

**Tatiana, the unconditional love you have for underprivileged children is an inspiration to all of us. This is why I am sharing this very urgent request with you, knowing that you have always been there for these children.**

In a country where half the population is under 18, thousands of children and young college students have been displaced because all of the schools, universities and medical schools have been destroyed around Port-au-Prince. They are returning to the Fort-Liberte area in Northern Haiti and we need your help to ensure we are prepared to help them in their time of need.

Please open your heart and make a special gift of $110 or more. You can give these Haitian youngsters the chance to reclaim what has been taken from them – hope and opportunity for brighter futures.

(next page, please)

**With your generosity today, we can help fund a new youth center in Fort-Liberte to provide these kids with a safe, stable and compassionate environment** – the type of environment that many of these children never thought they'd have the chance to experience so soon after the earthquake, if ever at all.

The children of Haiti have been through a great deal over the past couple of months... during which they have been uprooted from their homes, their families and their schools.  Some have been injured, some have lost loved ones, and all of them have had their lives turned upside down.

A youth center in Fort-Liberte can help change all that.

With your support today, you can give these children access to constructive, educational activities – including leadership and technical training – to help make them well-rounded, productive young adults.  You can give them the opportunity to participate in traditional childhood activities like choir, dance, theater and art.

**But most importantly, you can give them the chance to once again smile, laugh and feel somewhat normal in the midst of all the tragedy they have been through.**

And in return, they will show all of us how to find a joy for living in even the most simplest of things... like playing soccer with an empty plastic water bottle... having fun even without a soccer ball... improvising debris to create toys... using their creativity and imagination to persevere against all odds.

**The youth of Haiti deserve the best that we can provide as they make their journey through life... and you play a vital role in our ability to accomplish this because, in the words of our founder St. John Bosco, "Without you I can do nothing."**

Please reach out and help as many of these innocent children as you can.  I pray you are one of those special people who will be able to say yes to my request.  If you are unable to help at this time, please pray for our success.  And please continue to pray for the children of Haiti.

With sincere gratitude,

*Fr. Mark Hyde, sdb*

Father Mark Hyde, S.D.B.
Director

P.S.   The generosity of caring people like you is what keeps our spirits strong.  You are the reason we can – and will – rebuild the country of Haiti and continue to provide needy boys and girls with the academic and vocational knowledge to fulfill their dreams.  Please give what you can today.  Thank you.

<u>PROOF OF SERVICE BY MAIL</u>

I am employed in the County of Los Angeles, State of California, I am over the age of 18 and not a party to the within action.  My business address is 1990 S. Bundy Drive, Suite 705,  Los Angeles, California 90025.  On September 21, 2010, I served the foregoing documents:

DEFENDANT TATIANA KHAN'S OBJECTIONS TO THE PRESENTENCE REPORT AND SENTENCING POSITION PAPER

on the interested party in this action, as follows:

USPO Michael Barrett
United States Probation Officer
600 U. S. Courthouse
312 North Spring Street
Los Angeles, California 90012

[X]  **(VIA MAIL)**  I placed a true copy of the foregoing document in a sealed envelope addressed to each interested party as set forth above.  I placed each such envelope, with postage thereon fully prepaid, for collection and mailing at Los Angeles, California.

[X]  **(FEDERAL COURT ONLY)**  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury that the foregoing is true and correct. Executed on  September 21, 2010, at Los Angeles, California.

/S _____
Irene Clark